FILED
2008 Jan-16  AM 11:05
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## JASPER DIVISION

| | |
|---|---|
| **RICKY JAY LEWIS,** ) | |
| ) | |
| **Defendant/Movant,** ) | |
| ) | **Case Numbers:** |
| **vs.** ) | **CR 02-S-73-J** |
| ) | **CV 05-S-8061-J** |
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Respondent.** ) | |

## MEMORANDUM OPINION

On July 13, 2005, the movant, Ricky Jay Lewis, filed a motion pursuant to 28 U.S.C. § 2255, through counsel, challenging his conviction in the United States District Court for the Northern District of Alabama on June 11, 2002. The movant is incarcerated at the Federal Correctional Institution in Tallahassee, Florida.

## I. PROCEDURAL HISTORY

On June 11, 2002, the movant was found guilty after a jury trial of one count of conspiring to manufacture, distribute, and possess with the intent to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A), two counts of possession of pseudoephedrine with intent to manufacture in violation of 21 U.S.C. § 841(c)(1), and one count of possession with intent to distribute 5 grams or more of methamphetamine in violation of 21 U.S.C. § 841(a)(1) and 841 (b)(1)(B). He was represented at trial by Kearney Dee Hutsler. On January 14, 2003, movant

was sentenced to life in prison.  Movant appealed his conviction and sentence, asserting: (1) that the evidence did not support the conspiracy charge; (2) that the trial court erred in admitting law enforcement officers' testimony as experts about methamphetamine laboratories; (3) that the expert testimony should not have been admitted because the government failed to provide written summaries of the testimony before trial as required by Rule 16 of the Federal Rules of Criminal Procedure; (4) that the trial court erred in allowing the Government to exceed the scope of direct examination in the cross-examination of Clarence Shanklin, a witness called by movant; and (5) that the court improperly considered a prior felony drug conviction in enhancing his sentence.  He was represented at sentencing and on appeal by Don Colee.  The Eleventh Circuit Court of Appeals affirmed the conviction and sentence by opinion dated April 15, 2004.

On July 13, 2005, with the assistance of counsel, movant filed the instant motion to vacate his conviction pursuant to 28 U.S.C. § 2255, setting forth the following claims:

(1)    that he was arrested without probable cause and that the evidence seized should therefore have been suppressed;

(2)    that the Government lacked probable cause to indict movant;

(3)    that his trial counsel provided ineffective assistance in that he: (a) failed to conduct "meaningful pre-trial preparation"; (b) failed to

interview any of the 31 witnesses and/or alleged co-conspirators; (c) failed to adequately consult with movant during trial; (d) failed to present any defense to or research relevant "facts of law" regarding the case; (e) failed to object while defendant was being questioned by the Government; (f) failed to function as counsel guaranteed by the Sixth Amendment; (g) failed to subject the prosecution's case to "meaningful adversarial testing"; (h) "forced [movant] to trial under a direct 'conflict of interest' in that counsel admitted he did not know how to try a case of "this magnitude"; (I) failed to "recognize that [movant] cannot be held accountable for the alleged portions of a large drug conspiracy, especially when he was incarcerated"; (j) failed to hire a drug expert to rebut the Government's expert; (k) failed to object to the Government's withholding of discovery material until the day of trial and during trial; (l) lacked the knowledge or experience to handle a case like movant's; (m) allowed the testifying witnesses to "far exceed" the scope of cross examination, violating the right to confrontation guaranteed by the Sixth Amendment; (n) allowed the Court to limit his direct and cross examination; (o) "constructively denied" movant his Sixth Amendment rights during pre-trial, trial, and peremptory challenges by being "wholly absent"; (p) failed to seek a continuance in order to locate witnesses or give movant an opportunity to locate a competent lawyer; (q) "exceeded all ethical boundaries by not discharging his overarching duty to his client's cause" and by dividing his loyalties; (r) failed to recognize and challenge factual inaccuracies in the pre-sentence investigation report; (s) "merely stood mute" during trial; (t) failed to challenge the enhancement at sentencing for a managing role pursuant to U.S.S.G. § 3B1.1(a); (u) failed to inform movant of the maximum penalty available for the charges and lacked knowledge as to what that penalty could be; and (v) failed to challenge the legality of movant's arrest;[1]

---

[1]   In the list of claims, movant's counsel fails to set forth this claim as an ineffective-assistance claim, stating it only as a substantive Fourth Amendment claim. In the ensuing discussion, however, counsel faults the attorney for failing to challenge the "legality of the arrest in

(4) that his appellate counsel provided ineffective assistance in that he: (a) "stood mute" during sentencing and on appeal; (b) failed to challenge the enhancement of movant's sentence; (c) failed to raise all the issues on appeal that movant's counsel sets forth in the instant *habeas* petition; and (d) failed to seek *certiorari*, in spite of movant's request that he do so;

(5) that the court should reconsider the credibility of Government witness Danny Gene Alexander, a law enforcement officer who has since been convicted of smoking crack cocaine;

(6) that the district court erred in failing to recognize factual inaccuracies in the pre-sentence investigation report;

(7) that the district court erred in increasing the base offense level by four points for a leadership role; and

(8) that movant was charged with counts not mentioned in the indictment, including the § 851 enhancement.

Pursuant to the court's order to show cause, the Government filed an answer on November 3, 2005, supported by exhibits.  On November 8, 2005, the parties were notified that the answer would be considered for summary disposition, and the movant was notified of the provisions and consequences of this procedure under Rule 8 of the *Rules Governing § 2254 Cases*.  After seeking and receiving two extensions of time in which to file a reply, movant's counsel filed a reply on February 24, 2006. By order dated January 10, 2007, the court directed the Government to expand the

---

the first instance," noting that counsel did challenge the use of the seized evidence and the movant's statement.

record by filing documents relevant to their defense of procedural default, and the Government responded by filing those documents on January 30, 2007.  Movant was then given 20 days in which to supply the court with any additional argument or evidence.  A response, through counsel, was filed February 20, 2007.

## II.  PROCEDURAL DEFAULT

The Government asserts that movant's claims set forth herein as Claims 1, 2, 6, 7, and 8 are procedurally defaulted because the movant could have raised them on direct appeal but did not.  Because they are being raised now for the first time in this § 2255 motion, the claims cannot be reviewed on the merits absent a showing of "cause and prejudice" by the movant, explaining and excusing his failure to raise the claim at trial and on direct appeal.  In *United States v. Frady*, 456 U.S. 152, 102 S. Ct. 1584, 71 L. Ed. 2d (1982), the Supreme Court made clear that federal claims implicating the validity of a conviction or sentence must be raised at the earliest appropriate time, and that the claims that could be argued on direct appeal cannot be asserted in a collateral § 2255 motion unless there is "cause and prejudice" excusing the appellate default.  "[A] collateral challenge may not do service for an appeal." *Id*. at 165.

Adopting the "cause and prejudice" standard for § 2255 motions, the Supreme Court explained:

> Under this standard, to obtain collateral relief based on trial errors to which no contemporaneous objection was made, a convicted defendant must show both (1) "cause" excusing his double procedural default, and (2) "actual prejudice" resulting from the errors of which he complains.

*Id*. at 167-168.  The "double procedural default" mentioned by the court is a clear reference not only to the failure to make a contemporaneous trial objection, but also to the failure to assert the issue on direct appeal.  The Eleventh Circuit has similarly applied the "cause and prejudice" standard for analysis of procedural defaults in the § 2255 context.  In *Parks v. United States*, 832 F.2d 1244 (11th Cir. 1987), the Eleventh Circuit Court of Appeals held that alleged errors in sentencing could not be raised for the first time in a § 2255 *habeas* action without a showing of "cause and prejudice" excusing the failure to assert the claims on direct appeal.

In the instant case, it is clear that the movant procedurally defaulted these claims by failing to raise them in the direct appeal.  Because the claims were not raised on direct appeal, the question becomes whether "cause and prejudice" exists that excuses the default. Movant argues that his counsels' ineffective-assistance constitutes "cause."

The question of establishing the requisite "cause" to avoid procedural default by alleging attorney error was addressed by the United States Supreme Court in *Murray v. Carrier*, 477 U.S. 478, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986).  In

*Murray*, the petitioner in a *habeas* action attempted to show cause for a procedural

default by establishing that his attorney inadvertently failed to raise the claim on

appeal. *Id*. at 481. The Court explained:

> The mere fact that counsel failed to recognize the factual or legal basis
> for a claim, or failed to raise the claim despite recognizing it, does not
> constitute cause for a procedural default. *Engle v. Isaac*, 456 U.S. 107,
> 102 S. Ct. 1558, 71 L. Ed. 2d 783 (1982). The question of cause for a
> procedural default does not turn on whether counsel erred or on the kind
> of error counsel may have made. So long as a defendant is represented
> by counsel whose performance is not constitutionally ineffective under
> the standard established in *Strickland v. Washington*, 466 U.S. 668, 104
> S. Ct. 2052, 80 L. Ed. 2d 674 (1984), there is no inequity in requiring
> him to bear the risk of attorney error that results in a procedural default.

*Id*. at 478-79. The Supreme Court also has noted, in *Edwards v. Carpenter*, 529 U.S.

446, 451, 120 S. Ct. 1587, 146 L. Ed. 2d 518 (2000), that in order to constitute

"cause" to excuse a procedural default, counsel's ineffectiveness in failing to properly

raise the claim in state court "must have been so ineffective as to violate the Federal

Constitution." Moreover, as a claim of ineffective assistance, the claim must itself

be exhausted and not procedurally defaulted, for if such a claim is barred from

consideration on a procedural basis, it is not available to warrant any form of relief.

As discussed *infra*, movant has not presented any reason that might constitute "cause"

to excuse the default, except to assert that he had ineffective assistance of counsel.

Because the court finds, as explained below, that none of movant's claims of

ineffective assistance has merit, he cannot establish "cause" to excuse his procedural default.

The Government correctly notes also that the movant has failed to demonstrate the requisite prejudice. He has completely failed even to describe any alleged defects in the arrest, the indictment, the presentence report, or the offense level calculations used at sentencing. While he complains mightily, he has pointed to not one specific error or omission. For example, he complains that his attorney did not challenge the legality of his arrest, did not challenge the sufficiency of the evidence supporting his indictment, and did not interview any of movant's 30 co-defendants and co-conspirators. Yet, he has pointed to no evidence, no fact, from which it might be inferred that there was any basis for challenging his arrest, or for challenging his indictment, or for believing that an interview of any of the co-conspirators would have produced helpful evidence at trial. Accordingly, movant has not made a sufficient showing of "cause and prejudice" excusing the default. Thus, movant's Claims 1, 2, 6, 7, and 8 are due to be dismissed.

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

The movant asserts numerous claims that he received ineffective assistance of counsel both at trial and on appeal. The United States Supreme Court has established a national standard for judging the effectiveness of criminal defense counsel under

the Sixth Amendment.  "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result."  *Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).  The Court elaborated:

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components.  First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687.

In order to show ineffectiveness of counsel, the movant must demonstrate that his or her attorney's performance fell below "an objective standard of reasonableness," 466 U.S. at 688, and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  466 U.S. at 694.  Also, in making such an evaluation, "the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  466 U.S. at 690.  The effectiveness or ineffectiveness must be evaluated by

consideration of the totality of the circumstances, *Stanley v. Zant*, 697 F.2d 955, 962 (11th Cir. 1983), although the movant is required to identify the precise errors or omissions he contends constituted ineffective assistance. *See Footman v. Singletary*, 978 F.2d 1207 (11th Cir. 1992). The court must remember that a defendant in a criminal case has a constitutional right only to adequate counsel; he is not entitled to the very best legal representation. *Stone v. Dugger*, 837 F.2d 1477 (11th Cir. 1988).

The second requisite element in a claim of ineffective assistance of counsel is a showing of prejudice. Even if counsel made an error so egregious as to be outside the broad scope of competence expected of attorneys, a movant can obtain relief only if the error caused actual prejudice. *See Strickland v. Washington*, *supra*. Prejudice means a reasonable probability that the outcome of the proceeding would have been different had the errors not occurred.

**A. Failure to Adequately Prepare Pretrial**

The court first will examine movant's contentions that relate to his attorney's performance before trial. Specifically, he alleges that Hutsler failed to conduct pre-trial investigation, failed to meet with movant, failed to interview witnesses, failed to research relevant "facts of law," and failed to hire an expert on methamphetamine. (Claims 3(a), (b), (d) and (j)). Furthermore, movant asserts that counsel was simply

10

too inexperienced to try the case, and acted unethically due to "divided loyalties."
(Claims 3(h), (l), (p), and (q)).

All of these claims fail for the simple reason that they are unsupported by fact
and/or law.  Movant fails to describe any specific pretrial investigation that should
have been conducted or to describe how such investigation would have changed the
outcome of movant's case.  Similarly, although he refers to 31 witnesses and/or co-
defendants, he has failed to cite to a single fact  to which any one of these witnesses
would have testified that would have benefitted him.[2]  He does not identify any "fact
of law" that would have changed the outcome of the trial, and he fails to describe any
discovery that, if received by counsel, would have been outcome-determinative.[3]
Finally, movant provides no support for the allegation that an expert in the particular
drug at issue could have provided evidence that would have exonerated the movant.
At the very least he must now allege as a fact what a competent expert on the subject

---

[2]  Movant has not made any showing that the unidentified "witnesses" were available to
counsel.  To the extent that these witnesses were also defendants, experience warns that most would
not have consented to an interview upon advice of their attorneys, and, in fact, many co-defendants
entered plea agreements and agreed to assist the prosecution.  In any event, movant has failed to
identify a single witness who would have been available to be interviewed and could have provided
testimony, much less that the testimony would have been in any way helpful to movant.

[3]  The government's failure to provide discovery related to testimony of expert witnesses was
held to be non-prejudicial.  See opinion dated April 15, 2004, attached as Exhibit C to the
Government's Response to Order to Expand Record.

of methamphetamine, if hired, would have been able to say that would have been favorable to movant at trial.  He has not even attempted to allege such facts.

Absent an allegation of facts which, taken as true, would entitle the movant to relief, mere vague and conclusory allegations do not require a hearing.  *See  Tejada v. Dugger*, 941 F.2d 1551 (11th Cir. 1991).   The court of appeals has said:

> A petitioner is entitled to an evidentiary hearing if he alleges facts which, if true, would warrant habeas relief.  *Stano v. Dugger*, 901 F.2d 898, 899 (11th Cir. 1990) (*en banc*); *see also Futch v. Dugger*, 874 F.2d 1483, 1485 (11th Cir. 1989) (evidentiary hearing warranted if material facts not adequately developed in district court or state habeas proceeding); *Agan v. Dugger*, 835 F.2d 1337, 1338 (11th Cir. 1987).  A petitioner is not entitled to an evidentiary hearing, however, "when his claims are merely 'conclusory allegations unsupported by specifics' or 'contentions that in the face of the record are wholly incredible.'"  *Stano*, 901 F.2d at 899; *see also Diaz v. United States*, 930 F.2d 832, 834 (11th Cir. 1991) (evidentiary hearing need not be conducted "if it can be conclusively determined from the record that the petitioner was not denied effective assistance of counsel").   In addition, when considering whether an evidentiary hearing should be held on habeas claims based on occurrences outside the record, "no hearing is required if the allegations 'viewed against the record, either fail to state a claim for relief or are so palpably incredible or patently frivolous as to warrant summary dismissal.'"  *Shah v. United States*, 878 F.2d 1156, 1158 (9th Cir. 1989) (habeas case of federal prisoner) (quoting *Marrow v. United States*, 772 F.2d 525, 526 (9th Cir. 1985)).

*Id*. at 1559.  Here, none of the allegations made by movant warrants an evidentiary hearing; all are merely unsupported conclusory allegations, mostly refuted by the record itself.

Movant's claims that counsel was too inexperienced also lack any factual support.  The fact alone that an attorney has never handled a case of a particular size or type does not render him or her ineffective.  If it did, any attorney hired for his or her first case, or for a case involving a new area of law, or for a case with more claims or defendants, would be handing the client a ticket to get out of jail if convicted. Rather, the Sixth Amendment claim of ineffective assistance of counsel requires that a movant allege and demonstrate particular errors or omissions by counsel that prejudiced the  defense.  Although in the case of *Cronic v United States*, 466 U.S. 648, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984), the Supreme Court recognized that there could be "circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified," this rule has been very narrowly construed and subject to a heavy burden of proof.  *See Chadwick v. Green*, 740 F.2d 897 (11th Cir. 1984); *Stone v. Dugger*, 837 F.2d 1477 (11th Cir. 1988).  As the Eleventh Circuit noted in *Chadwick, "Cronic*'s presumption of prejudice applies to only a very narrow spectrum of cases where the circumstances leading to counsel's ineffectiveness are so egregious that the defendant was in effect denied any meaningful assistance at all."  *Chadwick v. Green*, 740 F.2d 897, 900 (11th Cir. 1984); *see also Frazier v. Secretary for Department of Corrections*, 197 Fed. Appx. 868, 872 (11th Cir. 2006).

In this case, movant simply has not pleaded facts that can sustain the *Cronic* burden. His trial attorney was not a young, inexperienced lawyer, but one who has tried felony cases in this court before. The transcript from the trial, and this court's own recollection of the trial, reveals that movant's trial attorney actively examined and cross-examined witnesses, objected to evidence offered by the Government, and generally subjected the Government's case to adversarial testing. Movant simply was not actually or constructively denied representation by counsel in any way close to that involved in *Cronic*. Thus, under the *Strickland* standard, movant is required to plead and prove specific errors and omissions by counsel, and he has failed to do that here. On its face, movant's § 2255 motion is so completely lacking in factual allegations, it is due to be denied.

Finally, movant's claim that counsel should have asked for a continuance in order for movant to seek new counsel is likewise unsupported. Thus, Claims 3(a), (b), (d), (j), (h), (l), (p), and (q) are without merit and are due to be denied because movant has failed to plead or prove any facts supporting either of the two prongs of the *Strickland* test.

## B. Ineffectiveness at Trial

Next movant asserts that his attorney rendered ineffective assistance during trial in that he failed to consult with movant during trial, failed to object during the

Government's cross examination of the movant, failed to act as an effective adversary, failed to understand the law regarding conspiracy, failed to object to the withholding of discovery materials, and failed to object to the Court's rulings regarding the scope of direct and cross examinations.  (Claims 3(c), (e), (f), (g), (I), (k), (m), and (n)).  In addition, movant alleges that counsel "merely stood mute" at trial.  (Claim 3(s)).

It must first be noted that counsel did not "stand mute" at trial.  The trial transcript is filled with examinations, cross-examinations, and objections made by movant's counsel at trial.  Claim 3(s) is simply without any foundation in fact.[4]

Similarly, movant's allegation that his attorney failed to consult with him during and before trial (Claim 3(c)) is without merit because the evidence indicates that counsel did consult with movant and, further, because movant has not alleged that any other or different consultation with him would have resulted in evidence or strategy that would have altered the result of the trial.[5]  Movant asserts in Claim 3(f) that his attorney allowed proceedings, such as *voir dire*, to take place while counsel

---

[4]    One example given by movant is that "Hutsler stood silent while Agent Alexander stated, he saw the drugs come from Lewis' hand."  In fact, Hutsler cross-examined Alexander about that allegation, and got Alexander to admit he did not see Lewis's hands.

[5]  A review of the transcript reveals that Hutsler even sought a recess during which to consult with his client about a document before continuing a cross-examination.  (*See* Trial Transcript, p. 507).  In light of specific instances in which counsel did consult movant, and in the absence of any specific instances in which counsel allegedly failed to consult movant, such a claim cannot succeed.

and movant were "wholly absent."  This claim is refuted by the record.  *See* Trial Transcript at p. 75 and p. 229, at which point the trial judge introduced movant and counsel to the jury venire and asked if any potential jurors knew movant or counsel.  *See also*, pp. 184-86, 239, and 255-258, at which Hutsler took part in *voir dire* by actively questioning the venire, and pp. 196-97, at which Hutsler sought to challenge potential jurors for cause.

Movant's claims regarding counsel's failure to object to the scope of examination (Claim 3(m)) , and in failing to object to limitations placed on the scope of movant's counsel's own examinations (Claim 3(n)), are likewise lacking factual support.  For such a claim to succeed, movant must demonstrate that the court rulings were improper and that, had examination been properly limited or expanded, testimony would have been elicited or excluded that would have caused the outcome of the trial to be different.  The movant has failed to point to any ruling regarding the admissibility of any specific testimony that was included or excluded which creates a reasonable probability that, had the ruling been different, the outcome of the jury's verdict would have been different.[6]

---

[6] Again, movant has failed to provide specific instances, but refers generally to the transcript of the trial at pp. 676-1164, 1170, and 1172-75.  The court surmises that counsel is referring to the issue that arose after several witnesses subpoenaed by movant to testify at trial invoked their Fifth Amendment rights during the court's examination outside the presence of the jury.  Movant has not demonstrated that these witnesses were improperly excluded.  Furthermore, to the extent that movant refers to the testimony of Clarence Shanklin, that issue was raised on appeal and was rejected by the

For the same reasons, movant's claim that counsel failed to "launch objections" during cross-examination of the movant by the prosecutor is too vague to warrant further review. Movant fails to demonstrate that any questions asked by the prosecution or other counsel were in any way objectionable, or that the making of any objections would have changed the outcome of the trial.[7] Because movant has failed to demonstrate that specific, meritorious objections should have been offered to specific, objectionable testimony, Claim 3(e) is due to be denied.[8]

Movant's claims 3(f) and (g) are merely vague accusations relating to counsel's lack of knowledge or ability. As the Government points out, counsel presented an opening statement, cross-examined witnesses, made objections, made a closing argument, and otherwise acted as an adversary. Such vague claims are insufficient

appellate court and is, therefore, procedurally barred from consideration here.

[7] He merely alleges that he "voiced objections" to counsel, which counsel apparently refused to voice to the court.

[8] In his grounds for relief, movant specifically complains of counsel's failure to object while movant was being cross-examined. In his brief, however, movant describes only three specific instances in which Hutsler failed to object, and those appear to be at times when other witnesses were on the stand. Movant's present counsel complains that Hutsler did not object "as to the whereabouts or substance" of a substance taken from a metal grate that was entered into evidence by the Government. Movant further argues that Hutsler should have objected when the prosecutor referred to witnesses as addicts but said they told the truth, and when a law enforcement officer testified that he saw drugs come from movant's hand. Movant does not even attempt to argue any ground for an objection to any of these examples of evidence, nor does he demonstrate that such objections would have been sustained. He seems to make the wholly unpersuasive argument that, had counsel made more frequent objections, the jury might have viewed the evidence with more skepticism. To the extent that movant has stated a ground for relief as to failure to object to these instances of testimony, the claim also is without merit.

to meet either prong of the *Strickland* test, and it simply cannot be said that counsel failed to subject the Government's evidence to meaningful adversarial testing.  Once again, movant has failed to point to any specific error or omission by counsel that might raise a reasonable probability that, had it not occurred, the outcome of trial would have been different.

Movant contends in Claim 3(I) that his counsel "failed to recognize" the law regarding conspiracy.  This claim also is without any support in fact or law.[9]  Movant does not explain how counsel's "failure to recognize" the law of conspiracy impacted on the evidence or outcome of the trial.  Numerous witnesses testified about movant's role in the conspiracy and the breadth of his participation.

Similarly, movant fails to support his claim that counsel failed to object to the alleged "withholding" of evidence that was discoverable (Claim 3(k).  It is clear from the transcript that Hutsler vigorously objected to the late production of discovery materials, and that the trial court reprimanded the prosecuting attorney, but clearly held that the late production was not so prejudicial as to require exclusion.  Clearly movant's counsel voiced the objection and, therefore, did everything he could do on

---

[9]  In evaluating the *habeas* claims of other defendants from this same case involving the methamphetamine conspiracy at issue, it has been noted repeatedly that conspirators can be accountable for the entire conspiracy.  Furthermore, a review of the trial transcript indicates that many witnesses testified as to movant's role in the manufacture and distribution of methamphetamine, and that the evidence as to the breadth of the conspiracy was strong.

that issue.   Movant makes the vague allegation that the discovery material was not

disclosed until "the day of trial and during trial."   Movant does not identify what

material was withheld or disclosed late, nor does he describe any prejudice he

suffered as a result of the prosecutor's alleged misconduct.   Absent some showing

that specific, discoverable evidence was withheld, and a demonstration that the non-

disclosure prejudiced the movant, he is not entitled to any relief on this claim.[10]

Accordingly, all of movant's claims relating to ineffective assistance of counsel

during trial are due to be dismissed.

### C.  Ineffective Assistance at Sentencing

Movant's final claims against Hutsler are that he failed to recognize factual

inaccuracies in the movant's PSI (Claim 3(r)), failed to inform movant about the

maximum allowable sentence of life in prison (Claim 3(t)), and failed to advise

movant about the effect of the sentencing enhancement provision of § 851. (Claim

3(u)).  The exhibits attached to the brief filed in support of the § 2255 motion indicate

that Hutsler told movant before trial that he faced a sentence of 30 years to life.  Thus,

movant was aware of the possible maximum sentence, contrary to his allegation at

Claim 3(t).  Also, the letters do not support the contention that Hutsler "did not even

---

[10]  To the extent that movant refers to disclosure of expert witnesses, that issue was raised
in the direct appeal, and the appellate court found that, even though the Government failed to make
proper disclosures, the defendants were not prejudiced.

know what a § 851 enhancement was." Even if Hutsler was woefully unschooled in that provision, it is clear that movant was aware of the potential effect of § 851, as he raised the issue with counsel. (See letters attached to movant's brief, dated May 9, 2002, and July 3, 2002.). Being aware of § 851, it cannot be said that movant was prejudiced by counsel's lack of knowledge. The letters from counsel make plain that movant was aware of the possibility of a life sentence and the possibility of application of the enhanced penalty provision before he made the decision to proceed to trial. Furthermore, movant has failed to allege any specific "inaccuracies" in the PSI. For these reasons, Claims 3(r),(t), and (u) are without merit. Accordingly, movant has failed to demonstrate that he was prejudiced by failure of counsel at sentencing.

### D.  Ineffective Assistance of Counsel on Appeal

Movant alleges that his attorney on appeal, Don Colee, rendered ineffective assistance in that he "stood mute" at sentencing and on appeal, and failed to object to or challenge the § 851 enhancement. (Claims 4(a) and (b)). Movant further complains that counsel failed to raise on appeal issues of ineffective assistance of trial counsel, and failed to seek *certiorari* after promising movant that he would do so. (Claims 4(c) and (d)).

The court again notes that Colee did not "stand mute" during the sentencing hearing.  He voiced objections that had been filed challenging the PSI, and noted that objections also had been filed by Hutsler.  He further set the stage for movant to address the court himself and to argue against the use of a Cullman County conviction as a prior conviction, arguing that his guilty plea was involuntary and unknowing. The court specifically rejected the contention.  Movant did not then and does not now provide any basis for a contention that his sentence was improperly enhanced or that he was not effectively represented by counsel at sentencing.  Accordingly, Claims 4(a) and (b) are due to be dismissed.

Movant next asserts that Colee improperly failed to raise on appeal the issues of ineffective assistance of trial counsel set forth in the instant § 2255.  For all of the reasons set forth herein, that claim is without merit.  Finally, movant asserts that Hutsler promised movant that he would seek review in the U.S. Supreme Court, and failed to do so.[11]  Movant has not described any claim that could have been raised in a petition for writ of *certiorari* that might have been well-founded, and certainly has not made any showing that such a petition would have been granted.  Further, the

---

[11]  Movant makes no explanation as to why he expected Hutsler, who had been replaced as counsel before sentencing even occurred, to step in again as counsel if his conviction was affirmed on appeal.  Even so, movant alleges that the "promise" was made by Hutsler, not by Colee.  There is no indication that movant sought to have Colee withdraw and Hutsler enter an appearance at that stage of the case, and such a conclusion would defy logic, since movant has asserted that he was very unhappy with Hutsler's performance.

Sixth Amendment right to counsel, upon which the right to effective counsel hinges, does not extend to discretionary review. Thus, counsel's failure to seek *certiorari* review in the Supreme Court cannot be ineffective assistance. Accordingly, Claims 4(c) and (d) also are due to be dismissed.

## IV.  NEWLY DISCOVERED EVIDENCE

Movant asks the court to "reconsider the credibility" of one of the witnesses for the Government, Danny Alexander, who was a law enforcement agent acting as part of the team of investigators working on this case, and who has since been convicted himself of drug crimes. In movant's case, however, there was ample evidence from which a reasonable juror could have found movant guilty, even in the absence of Alexander's testimony. Many witnesses testified to Lewis's role in the conspiracy. Lewis admitted that he purchased huge numbers of pseudoephedrine pills that he knew would be "cooked" into methamphetamine. Lewis was closely involved with other conspirators, and traveled with co-conspirators to Florida to buy the pills. He was present when the pills were made into "flea powder," a step taken to prepare the pseudoephedrine to be cooked into methamphetamine. He admits that he had ready access to methamphetamine, and that he provided the drug to the people who helped him obtain the pills. Although it was Alexander who testified that a bag of white powder fell from movant's hand during his arrest, and who was part of the

chain of custody for that evidence, that evidence was not critical to the conviction of movant. The arrest was captured on video and was seen by the jury. The testimony of the accompanying law enforcement office, Alan Wilson, corroborated Alexander's account. Moreover, when the movant testified, he did not deny Alexander's account of finding a purple gym bag in the car that contained pseudophedrine; he only denied the drug recovered from the metal grate where movant was taken into custody. The jury reasonably rejected Lewis's contention that his role was limited to blindly buying and selling over-the-counter pills, with no knowledge as to what was happening to those pills, no knowledge or involvement in the cooking of methamphetamine, and no role in the distribution of the finished product.

Even in the absence of Alexander's testimony, the evidence of Lewis's involvement in the methamphetamine conspiracy was overwhelming.[12] Accordingly, movant has failed to demonstrate that he is entitled to any relief as a result of the "newly discovered" evidence of Alexander's conviction, and Claim 5 also is due to be dismissed.

## V. CONCLUSION

---

[12] It is interesting to note that, in a letter to movant dated May 9, 2002, Hutsler warned movant that several facts, including that movant bought and sold large amounts of pseudophedrine, his live-in girlfriend used methamphetamine, and her father and brother were involved in the cooking operation, were enough to convince a jury that he was part of the drug conspiracy. What Hutsler warned movant of a month before trial was essentially what happened.

Movant is not entitled to any relief from his conviction and sentence.  The allegations of his motion are little more than a laundry list of complaints, almost all of which are affirmatively refuted by the trial record.  By separate order, the court will deny the motion made pursuant to § 2255 to vacate or set aside movant's conviction and sentence.

The Clerk is DIRECTED to mail a copy of the foregoing to movant.

DONE this 16th  day of January, 2008.

_____
United States District Judge